**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO**

Civil Action No. 1:09-cv-01632-CMA-BNB

MARK SMITH, individually and on behalf
of a class of others similarly situated,

        Plaintiffs,

vs.

PIZZA HUT, INC.,

        Defendant.

---

**PLAINTIFF'S MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION AND MEMORANDUM IN SUPPORT**

---

Plaintiff, individually and on behalf of all others similarly situated, moves this Court under § 216(b) of the Fair Labor Standards Act for an Order conditionally certifying this case as a collective action, authorizing Plaintiff to send notice of this case to all current and former delivery drivers of defendant Pizza Hut, Inc. ("Pizza Hut" or "Defendant") at any time during the last three (3) years, and ordering Pizza Hut to provide Plaintiff's counsel with a computer readable data file containing the name, last known address, dates of employment, and telephone numbers for each such current and former delivery driver. Plaintiff incorporates herein the attached memorandum in support of this motion.

WHEREFORE, Plaintiff respectfully requests that the Court grant this motion and all relief sought herein and for such further relief as the Court deems equitable and just.

**MEMORANDUM IN SUPPORT**

### I. Preliminary Statement

For better or worse, pizza is a staple of the American diet and, indeed, is part of American culture. Hundreds of millions of pizzas are delivered each year to customers' homes and workplaces. As America's first national pizza chain, Pizza Hut employs thousands of delivery drivers to deliver its pizzas. Pizza Hut, however, does not reimburse its drivers for the automobile expenses they incur in delivering pizzas at either the drivers' actual costs or the presumptively reasonable IRS standard business mileage expense reimbursement rate. Pizza Hut further fails to reimburse its drivers for other job-related expenses they incur. Because the drivers' unreimbursed expenses constitute "de facto deductions" that drive their wages below the federal minimum wage, Pizza Hut is violating the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*

This motion seeks to protect the rights of Pizza Hut's current and former delivery drivers. Plaintiff requests (1) conditional collective action certification and (2) permission to send these drivers notice under 29 U.S.C. § 216(b) informing them of their right to join this case and allowing them to decide whether to seek their unpaid wages. Without the requested court-ordered notice, many delivery drivers will never learn about this case and their viable claims will silently slip away under the FLSA statute of limitations.

Through the detailed allegations in the Complaint, company-wide policy documents and the declarations of a substantial number of Pizza Hut's delivery drivers, Plaintiff has provided far more than the mere "substantial allegations" required to show that Pizza Hut delivery drivers are similarly situated with respect to Pizza Hut's expense

2

reimbursement policy necessary to satisfy the "lenient standard" for conditionally certifying a collective action and authorizing notice.

## II.     Statement of Facts

During the class period, Pizza Hut has owned and operated approximately 1,877 Pizza Hut corporate stores in the United States, including Colorado. Ex. 23-A. Each of Pizza Hut's restaurants employs delivery drivers who are primarily responsible for delivering pizzas and other food items to customers' homes and workplaces. Compl., ¶ 10.

Named Plaintiff Mark Smith was employed by Pizza Hut as a delivery driver from approximately October 2005 to August 2006 and May 2008 to January 2009. He worked at their store located in Greenwood Village, Colorado. Compl., ¶ 8; Ex. 1, ¶ 1.

Since this suit was filed, thirty (30) additional Plaintiffs have joined by filing consent forms pursuant to Section (16)(b) of the FLSA, 29 U.S.C. s 216(b). (Docket Nos. 4, 8, 10, 12, 13, 16, 17, 18, 19, 20, 21, 27, 30, 35, 42, 43, 54, 56). These opt-in Plaintiffs are/were employed at 17 different corporate stores owned and operated by Pizza Hut in three different states. (Declarations of Mark Smith, Randall Alexander, Cheri Bauer, Steven Bauer, Lisa Berry, Tyrone Bowden, John Bright, Roland Capelton, Patrick Coffman, David Drew, Alex Frisbie, Wally Godby, Bryan Harris, Robert Lessenden, Amy McVey, Kenneth Mitchell, Donyel Rivers, Brian Stevens, Penni Tanner, Humberto Valderrama, Amanda Wilkes and Clyde Williams (collectively "Plaintiff Declarations"), attached hereto as Exhibits 1-22).

All delivery drivers employed by Pizza Hut during the class period share the same job duties – to deliver pizzas and other food items to customers' homes and

3

workplaces. Compl., ¶¶ 10-12; Plaintiff Declarations, ¶ 2). Pizza Hut requires its delivery drivers to maintain and pay for operable, safe and legally-compliant automobiles to use in delivering its pizza and other food items, which includes purchasing gasoline, vehicle parts and fluids, automobile repair and maintenance services, and automobile insurance, and suffering automobile depreciation (collectively "automobile expenses"), all for the primary benefit of Pizza Hut. Compl., ¶¶ 13, 15; Plaintiff Declarations, ¶ 3.

Pizza Hut's delivery drivers enter into a "Delivery Driver Agreement" in which they agree to "Keep [their] vehicle clean and in good repair while driving for Pizza Hut." (Ex. 23-B). Delivery drivers must undergo Pizza Hut's "Vehicle Safety Check" every six months to make sure their vehicle is maintained according to company standards. (Ex. 23-C). Pizza Hut also requires its delivery drivers to "maintain auto insurance" because "Pizza Hut provides **no** insurance coverage for damages to [a drivers'] vehicle." (Ex. 23-B and -D).

Pizza Hut's "Delivery Driver Reimbursement Policy applies to all employees of Pizza Hut who deliver pizza and other approved menu items to customers." (Ex. 23-E; Plaintiff Declarations, ¶ 5). It reimburses drivers on a flat "per delivery" basis, regardless of the number of miles they drive or the actual expenses they incur. (Ex. 23-E). To account for "regional differences in the price of gas," Pizza Hut sets "a Delivery Reimbursement Rate per customer delivery for each region in which the company owns and operates restaurants." (Ex. 23-E).

To properly perform their jobs, delivery drivers must purchase and carry certain "tools of the trade," including maps, flashlights, batteries, and a cell phone, to assist

them in locating the customer in a timely manner. Compl., ¶¶ 14, 15; Plaintiff Declarations, ¶ 8; Ex. 23-F). For example, delivery drivers are expected to call both their store manager and the customer if no one appears to be home. (Ex. 23-F). Despite being required, Pizza Hut does not pay for or reimburse drivers for these items. (Compl., ¶¶ 14, 15, 18).

In addition, Pizza Hut's uniform policy requires delivery drivers to wear distinctive red and black logoed shirts and hats, black pants, and black restaurant-quality non-slip shoes. (Plaintiff Declarations, ¶ 9; Ex. 23-G and -H). Pizza Hut requires its delivery drivers to purchase their own black pants and black restaurant-quality non-slip shoes to complete their uniform. (Plaintiff Declarations, ¶ 9). Pizza Hut also requires its drivers to "wear a clean and proper uniform at all times." (Ex. 23-G). Because these uniforms get pizza sauce and grease on them during the course of a driver's shift, drivers have to frequently wash and remove stains from their uniform, again at their own expense. (Plaintiff Declarations, ¶ 10; Ex. 23-H).

Pizza Hut's automotive reimbursement rates are inadequate to fully reimburse delivery drivers for the expenses they incur delivering pizzas for Pizza Hut. (Compl., ¶ 18; Plaintiff Declarations, ¶ 6). Pizza Hut's reimbursement rates are far less than the IRS reimbursement rate and do not cover all the expenses drivers actually incur. (Plaintiff Declarations, ¶ 7). Further, Pizza Hut fails to reimburse any amounts for other job-related expenses. (Plaintiff Declarations, ¶ 11). These unreimbursed business expenses cause Pizza Hut delivery drivers to be paid less than federal minimum wage. Compl. ¶¶ 18, 23, 44, 49).

### III.     Question Presented

Whether Plaintiff's FLSA claim for unpaid minimum wages should be conditionally certified as a collective action under 29 U.S.C. § 216(b).

### IV.     Argument

#### A.     Plaintiff's FLSA Claims Should Be Certified as a Collective Action

The FLSA provides a private right of action to recover damages for violations of the FLSA's minimum wage provisions, such as those that have occurred here. 29 U.S.C. § 201 *et seq*. The purpose of the FLSA is to "eliminate" unfair labor practices because their existence creates "detriment[] to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers," "burdens commerce and the free flow of goods," "constitutes an unfair method of competition," and "leads to labor disputes." 29 U.S.C. § 202(a), (b).

Section 206 of the FLSA requires employers, such as Pizza Hut, to pay its employees a minimum hourly wage, while Section 211 requires employers to keep records of all deductions from wages. 29 U.S.C. §§ 206, 211(c). Plaintiff seeks collective action certification to pursue claims against Pizza Hut for violating the FLSA's requirement to pay its delivery drivers federal minimum wage, and authorization to send notice of this lawsuit to similarly situated delivery drivers under § 216(b), which provides as follows:

> An action to recover the liability prescribed in [§§ 206 or 207] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

"Section 16(b) states the opportunity to proceed as an opt-in class on behalf of similarly situated individuals is a 'right.' As such, only if we determine the action relates to specific issues and circumstances personal to the plaintiff rather than any generally applicable policy or practice can we foreclose the right to proceed as a class." *Burt v. Manville Sales Corp.*, 116 F.R.D. 276, 277 (D. Colo. 1987).

Section 216(b) authorizes the Court to issue court-supervised notice to "similarly situated" employees. *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989). Court-authorized notice protects against "misleading communications" by the parties, resolves the parties' disputes regarding the content of any notice, prevents proliferation of multiple individual lawsuits, assures joinder of additional plaintiffs is accomplished properly and efficiently, and expedites resolution of the dispute. *Id.* at 171-72. Because the statute of limitations is not tolled for putative class members until they file a consent to join the action (29 U.S.C. § 216(c)), the decision to send notice is typically made early in the case. *Hoffman v. Sbarro, Inc.,* 982 F.Supp. 249, 260 (S.D.N.Y. 1997).

### 1. The Two –Tier Analysis

The Tenth Circuit uses a two (2) step approach to determine whether plaintiff and putative class members are "similarly situated" for purposes of § 216(b). *Thiessen vs. General Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001).[1] Under this approach, the Court determines at the "notice stage" whether plaintiffs are "similarly situated," which "require[s] nothing more than substantial allegations that the putative

---

[1] *Thiessen* was brought under the Age Discrimination in Employment Act ("ADEA"). Because the ADEA expressly incorporates the enforcement provisions of the FLSA, courts may look to cases under either statute with respect to the proper interpretation of Section 216 of the FLSA. See *Hoffman*, 493 U.S. at 167-68, *Thiessen*, 267 F.3d at 1097. Courts within the Tenth Circuit thus follow *Thiessen's* two-step approach in FLSA claims. *See, e.g., Underwood vs. NMC Mortg. Corp.,* 2009 WL 1322588, at *2 (D. Kan. May 11); *Garcia vs. Tyson Foods, Inc.*, 255 F.R.D. 678, 685 (D. Kan. 2009).

7

class members were together the victims of a single decision, policy, or plan." *Id.* at 1102 (*quoting Vaszlavik vs. Storage Tech Corp.*, 175 F.R.D. 672, 679 (D. Colo. 1997)); *see also Gipson vs. Southwestern Bell Tele. Co.*, 2009 WL 1044941, at *1 (D. Kan. Apr. 20; *Garcia vs. Tyson Foods, Inc.*, 255 F.R.D. 678, 685 (D. Kan. 2009). Plaintiff may rely solely on the allegations in his complaint. *Id.* The standard for certification "at the notice stage, then, is a lenient one." *Thiessen*, 267 F.3d at 1103; *Gipson*, 2009 WL 1044941, at *1; *Garcia*, 255 F.R.D. at 685. A motion for preliminary certification at the "notice stage" "typically results in conditional certification of a representative class." *Gipson*, 2009 WL 1044941, at *1 n.7; *Garcia*, 255 F.R.D. at 685 (same); *Underwood v. NMC Mortg. Corp.*, 245 F.R.D. 720, 723 (D. Kan. 2007); *Renfro v. Spartan Computer Serv., Inc.*, 243 F.R.D. 431, 435 (D. Kan. 2007).

The dispositive question during the initial certification stage is whether the original plaintiffs and the potential opt-in plaintiffs are similarly situated. To meet this burden, Plaintiffs needs show only that their positions are similar, not identical, to the positions held by the putative class members. *Underwood*, 2009 WL 1322588, at *3 (*citing Hipp v. Liberty Nat'l. Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001)); *Garcia*, 255 F.R.D. at 687 (holding that differences between class members at "notice stage" "do not diminish [the] predominant relevant similarity"). "To impose a strict standard of proof [at the certification stage] would unnecessarily hinder the development of collective actions and would undermine the 'broad remedial goals' of the … FLSA." *Garner vs. G.D. Searle Pharm. & Co.*, 802 F.Supp. 418, 422 (M.D. Ala. 1991).

"Generally, where putative class members are employed in similar positions, the allegation that defendants engaged in a pattern or practice of not [complying with the

FLSA] is sufficient to allege that plaintiffs were together the victims of a single decision, policy, or plan." *Gipson*, 2009 WL 1044941, at *11.

After discovery has been completed, the Court reconsiders whether the plaintiffs are "similarly situated" using a stricter standard. *Thiessen*, 267 F.3d at 1102-03. During this "second stage" analysis, the Court reviews several factors, including the disparate factual and employment settings of the individual plaintiffs, any defenses that appear to be individual to each plaintiff, and fairness and procedure considerations. *See, e.g.*, *Underwood*, 2009 WL 1322588, at *2; *Garcia*, 255 F.R.D. at 685.

The goal of judicial economy also weighs heavily in favor of certification and issuing notice to potential class members. *See Hoffman-La Roche*, 493 U.S. at 170. Collective actions benefit the judicial system by enabling the "efficient resolution in one proceeding of common issues of law and fact.…" *Id.* Further, a collective action provides plaintiffs the opportunity to "lower individual costs to vindicate rights by the pooling of resources." *Id.* Certification and court-supervised notice is thus routinely granted under § 216(b). *See, e.g., Creten-Miller v. Westlake Hardware, Inc.*, 2009 WL 2058734, *6 (D. Kan. July 15); *Gipson*, 2009 WL 1044941, at *5-6; *Garcia*, 255 F.R.D. at 685-87; *Clayton v. Velociti, Inc.*, 2009 WL 304190, at *4 (D. Kan. Feb. 9); *Barnwell v. Correction Corp. of America*, 2008 WL 5157476, at *7 (D. Kan. Dec. 9); *Lewis v. ASAP Land Express, Inc.*, 2008 WL 2152049, at *3 (D. Kan. May 21); *Underwood,* 245 F.R.D. at 723; *Renfro*, 243 F.R.D. at 435.

### 2. This Case Satisfies the Lenient First-Tier Analysis

Plaintiff has easily met the lenient standard for establishing that all delivery drivers employed by Pizza Hut are "similarly situated" for purposes of § 216(b)

notification. Plaintiff and Pizza Hut's other drivers held the same job, shared the same job duties, and all incurred automobile costs that were not fully reimbursed, and other job-related expenses that were not reimbursed at all. Further, Pizza Hut's delivery driver reimbursement policy applied to all delivery drivers. And while Pizza Hut's specific Delivery Reimbursement Rate changed with the fluctuation in gas prices and other regional price differences, Plaintiff contends that the formula itself is flawed and significantly under-values the expense of owning and operating an automobile, regardless of the region in which a driver lives. Similarly, the fact that Pizza Hut fails to provide any reimbursement for other job-related expenses operates as a further deduction from all drivers' wages. While Pizza Hut may argue that drivers incurred job-related expenses in differing amounts and in some but not all workweeks, the fact remains that Pizza Hut has a consistent policy not to reimburse for any job-related expenses and thus delivery drivers all suffered some "de facto" deductions that unlawfully reduced their net wages below minimum. Plaintiffs and Pizza Hut's other delivery drivers were thus the victims of a single decision, policy, or plan.

In addition to Plaintiff's detailed allegations and the documents reflecting Pizza Hut's policies, Plaintiff has substantiated his allegations through his declaration and declarations of 21 additional opt-in plaintiffs who have, between them, worked at 17 different corporate stores operated by Pizza Hut in three different states. These declarations provide more than ample support for Plaintiff's allegations that Pizza Hut's automobile expense and reimbursement policies fail to fully reimburse delivery drivers for automobile expenses, and completely fail to reimburse them for other job-related expenses. The net effect of Pizza Hut's unlawful practice of failing to reimburse for

automobile costs and other job-related expenses is that Pizza Hut has willfully failed to pay its employees federal minimum wage in violation of the FLSA.

Though the merits of Plaintiff's case are wholly irrelevant to the Court's decision to authorize notice, the law under which Pizza Hut's reimbursement policy must be evaluated is clear.  An employer may not deduct the cost of expenses that primarily benefit the employer from employee wages when such deductions drive wages below the federal minimum wage.  *See, e.g., Arriaga v. Florida Pacific Farms, LLC*, 305 F.3d 1228, 1236 (11th Cir. 2002); *Garcia v. Frog Island Seafood, Inc.* (hereinafter "*Frog Island*"), 644 F.Supp.2d 696, 705 (E.D.N.C. 2009); 29 C.F.R. §§ 531.35, 531.36(b). This rule cannot be avoided by simply requiring employees to make such purchases on their own, either in advance of or during the employment.  *Arriaga*, 305 F.3d at 1236 (citing *Ayres v. 127 Restaurant Corp.*, 12 F.Supp.2d 305, 310 (S.D.N.Y. 1998)); *Frog Island*, 644 F.Supp.2d at 705.  There is no legal difference between deducting a cost directly from the worker's wages and shifting a cost, which they could not deduct, for the employee to bear.  *Arriaga*, 305 F.3d at 1236-37 (shifting costs to employee that primarily benefit employer constitutes "de facto deduction"); *Frog Island,* 644 F.Supp.2d at 705, 708-709 (same).  If the employer requires an employee to provide expenses that primarily benefit the employer, the employer violates the FLSA in any workweek when such expenses cut into the minimum or overtime wages required to be paid under the FLSA.  *Arriaga*, 305 F.3d at 1237; 29 C.F.R. § 531.35; 29 C.F.R. § 531.36(b).

Plaintiff's evidence well exceeds the "substantial allegations" required by this Circuit for § 216(b) notification at this early phase of the litigation, and establishes that notice should be immediately sent to all those who have been employed by Pizza Hut

as delivery drivers within the last three (3) years. *See Thiessen*, 267 F.3d at 1102; *Vaszlavik, at 678-79* (conditionally certifying class based on allegations that putative plaintiffs were the victims of the same plan).

### 3. Consent Forms and Discovery

Plaintiff requests that the Court approve the notice attached hereto as "Exhibit 24" to be sent to all similarly situated employees. The attached notice is very similar to the notice approved by the Court in *Renfro* and *Gipson*, considering the differences in underlying facts. In furtherance of the notice, Plaintiff requests the Court to order Pizza Hut to produce the names, addresses, phone numbers, and email addresses of the class to facilitate notice to potential plaintiffs of this pending lawsuit. Finally, Plaintiff requests that the Court order a ninety (90) day period (after the mailing of the court-authorized notice) for those persons receiving notice to opt-in to the case.

A "…Court should refrain from altering a plaintiff's proposed notice unless doing so is necessary." *Gipson*, 2009 WL 1044941, at *4 (citing *Heitmann v. City of Chicago*, 2004 WL 1718420, at *3 (N.D. Ill. July 30, 2004); *McCaffrey vs. Mortg. Sources Corp.*, 2009 WL 2778085, *5 (D. Kan. Aug. 27, 2009) (same). Pizza Hut previously indicated that it prefers certain language from notices disseminated in other cases. In effect, Pizza Hut sought to incorporate a compilation of the most onerous terms from other notices. However, the proposed notice chosen by Plaintiff should be approved as it is fair and accurate on the whole. *Id*. Notably, this is a communication between Plaintiffs' counsel and prospective clients with which Pizza Hut should not be permitted to interfere absent compelling justification. Hence, the District Courts within this Circuit will not change a plaintiff's proposed notice unless "necessary." *Gipson, McCaffrey*.

### V.     Conclusion

Plaintiff's FLSA claims are well-suited to conditional collective action certification in light of the similarity of job duties of Pizza Hut's delivery drivers, the uniformity of its policy and practice of failing to fully reimburse for automobile expenses and completely failing to reimburse any other job-related expenses. Accordingly, Plaintiff respectfully request that the Court:  1) conditionally certify Plaintiff's FLSA claims to proceed as a collective action; 2) order Pizza Hut to identify all delivery drivers it has employed at any time in the last three years; 3) order Pizza Hut to provide this information to Plaintiff's attorneys within fourteen (14) days; and 4) direct the issuance of Plaintiff's proposed notice, attached hereto as Exhibit 24 to all such persons on an expedited schedule.  A copy of a proposed Consent to Join form to accompany the FLSA notice is attached hereto as Exhibit 25.

Dated:          January 4, 2010

Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**
 /s/ Richard Paul
George A. Hanson
Richard M. Paul III
Jack D. McInnes
460 Nichols Road, Suite 200
Kansas City, Missouri  64112
Telephone:   (816) 714-7100
Facsimile:    (816) 714-7101

And

**WEINHAUS & POTASHNICK**
Mark A. Potashnick
11500 Olive Blvd., Suite 133
St. Louis, Missouri  63141
Telephone:   (314) 997-9150
Facsimile:    (314) 997-9170

**ATTORNEYS FOR PLAINTIFFS**

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

James M. Lyons
S. Kato Crews
ROTHGERBER JOHNSON & LYONS LLP
1200 17th Street, Suite 3000
Denver, CO 80202
Email: jlyons@rothgerber.com
         kcrews@rothgerber.com

Layn R. Phillips
Andra Barmash Greene
IRELL & MANELLA LLP
840 Newport Center Dr., Suite 400
Newport Beach, CA 92660
Email: lphillips@irell.com
         agreebe@irrell.com

ATTORNEYS FOR DEFENDANT

    /s/ Richard M. Paul III
Attorney for Plaintiffs