**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 09-cv-01632-CMA-BNB

MARK SMITH, individually and on
behalf of other similarly situated persons,

      Plaintiff,

v.

PIZZA HUT, INC.

      Defendant.

---

**ORDER DENYING IN PART AND GRANTING IN PART
DEFENDANT'S MOTION TO DISMISS**

---

This matter is before the Court on Defendant Pizza Hut's Motion to Dismiss

Plaintiff's Second Amended Complaint (Doc. # 147).  In this case, Plaintiff Mark Smith

("Plaintiff"), individually and on behalf of other similarly situated persons, alleges that

Defendant violated the Fair Labor Standards Act ("FLSA") and the minimum wage laws

of various states by failing to reasonably approximate employees' automotive expenses

for reimbursement purposes, and consequently, failing to pay the minimum wage.

  Plaintiff brings his claims individually and as a representative of a collective

action under the FLSA.   The FLSA provides that individuals may opt-in to a collective

action if they are similarly situated to the named plaintiff.  29 U.S.C. § 216(b).  Only

those individuals who opt-in to the collective action will be bound by the judgment in

the case. *See Dolan v. Project Constr. Corp.*, 725 F.2d 1263, 1266 (10th Cir. 1984)

(disapproved of on other grounds by *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S.

165 (1989)).  Jurisdiction over Plaintiff's FLSA claims is proper pursuant to 29 U.S.C.

§ 216(b) and 28 U.S.C. § 1331.

Additionally, Plaintiff brings a Rule 23 class action claim under the minimum

wage laws of various states.  The state law class action encompasses all delivery

drivers who currently and formerly worked for Defendant in the various states named

in the SAC.[1]  Unlike the FLSA collective action, a class action requires individuals to

opt-out.  Individual drivers who do not opt-out of the class action are bound by the

judgement in the case.  *See* Fed. R. Civ. P. 23(c)(3); *Hoffman-La Roche*, 493 U.S.

at 177.  Jurisdiction over Plaintiff's state law class action claim is proper pursuant

to 28 U.S.C. § 1367(a), supplemental jurisdiction.

## I. BACKGROUND

## A.   FACTS

Defendant owns and operates over 1000 Pizza Hut restaurants in the United

States.  Plaintiff was employed by Defendant as a pizza delivery driver in Colorado from

October 2005 to August 2006 and again from May 2008 to January 2009.  Defendant

allegedly paid Plaintiff $7.50 per hour during the last six months of his employment,

from August 2008 to January 2009.  (Doc. # 144 at 8.)  During that time period, the

federal minimum wage was $6.55 per hour.  As reimbursement for his vehicle-related

---

[1] The states included in the proposed class action are Arizona, Arkansas, California, Colorado, the District of Columbia, Florida, Illinois, Iowa, Maryland, Massachusetts, Michigan, Missouri, Nevada, Ohio, Pennsylvania, Washington, and West Virginia.

2

expenses, Plaintiff alleges that he was paid between $0.92 and $0.98 per delivery

between May 2008 and January 2009.[2]  Plaintiff alleges he drove five miles per delivery,

made 2.4 deliveries per hour, and made approximately 2,500 deliveries between August

2008 and January 2009.  (Doc. # 144 at 9.)

Opt-in Plaintiffs were also employed by Defendant as delivery drivers at stores in

Colorado, Kansas, and Missouri.[3]  (Doc. # 144 at 12.)  Opt-in Plaintiffs allegedly were

paid at or near the applicable state minimum wage, but were never paid more than

$1.70 over the federal minimum wage.  (Doc. # 144 at 12.)  Opt-in Plaintiffs also

allegedly drove approximately five miles per delivery, made between two and three

deliveries per hour, and were reimbursed at a rate similar to Plaintiff.

Plaintiff alleges that Defendant required its delivery drivers to "maintain and pay

for safe, legally-operable, and insured automobiles when delivering Pizza Hut's pizza

and other food items."  (Doc. # 144 at 5.)  Plaintiff further alleges that it was Defendant's

policy and practice to unreasonably estimate employees' automotive expenses for

reimbursement purposes, which caused Plaintiff, opt-in Plaintiffs, and other similarly

---

[2]  Plaintiff alleges that he was employed by Defendant from May 2008 to January 2009.
However, Plaintiff only provides minimum wage rates and estimated vehicle-related expenses
for the time period of August 2008 to January 2009.

[3]  To date, the following individuals have opted-in to the FLSA collective action: Jack
Abrahamian, James Adair, Randall Alexander, Cheri Bauer, Steve Bauer, Lisa Berry, Alfred
Billups, Tyrone Bowden, John Bright, Roger Britt, Roland Capelton, Patrick Coffman, Drew
David, Michael Downey, Susannah Downey, Alexander Frisbie, Wally Godby, Bryan Harris,
Danielle Jones, Robert Lessenden, Amy McVey, Kenneth Mitchell, Derrick Paige, Donyel
Rivers, Brian Stevens, Ken Stober, Penni Tanner, Humberto Vallderrama, Sherre Wichman,
Amanda Wilkes, and Clyde Williams (collectively, "opt-in Plaintiffs").

situated individuals to be paid less than the federal minimum wage and various state minimum wages.  (Doc. # 144 at 21.)

## B.    PROCEDURAL HISTORY

Plaintiff filed his original Complaint on July 9, 2009.  (Doc. # 1.)  Subsequently, Defendant filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Plaintiff failed to allege sufficient facts in support of his claims.  (Doc. # 22.)  This Court, finding that Plaintiff's Complaint lacked clarity and suffered from conclusory allegations, dismissed the Complaint without prejudice.  (Doc. # 98.)

On March 31, 2010, Plaintiff filed an Amended Complaint.  (Doc. # 99.) Subsequently, Defendant again filed a Rule 12(b)(6) Motion to Dismiss.  (Doc. # 107.) Plaintiff sought leave to amend on July 20, 2010 (Doc. # 131), which was granted on August 10, 2010 by Magistrate Judge Boyd N. Boland.  (Doc. # 143.)

Plaintiff then filed the Second Amended Complaint on August 10, 2010.  (Doc. # 144.)  Defendant filed the instant Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on September 8, 2010.  Plaintiff responded on September 29, 2010 (Doc. # 155), and Defendant replied on October 13, 2010.  (Doc. # 157.)

## II. <u>STANDARD OF REVIEW</u>

Fed. R. Civ. P. 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  The complaint will survive a motion to dismiss only if it "contains 'enough facts to state a claim to relief that is plausible on its face.'"  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177

(10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law."  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion to dismiss, a court "'accept[s] all the well-pleaded allegations of the complaint as true and construe[s] them in the light most favorable to the plaintiff.'"  *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996) (quoting *Gagan v. Norton*, 35 F.3d 1473, 1474 n. 1 (10th Cir. 1994)).  Nevertheless, the courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "[A] complaint does not suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 129 S. Ct. at 1949.  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

## III.  ANALYSIS

Defendant contends that Plaintiff's FLSA claim should be dismissed because (1) Plaintiff fails to allege facts sufficient to state a plausible claim that Plaintiff and a nation-wide class of drivers were paid below the federal minimum wage and (2) the Second Amended Complaint does not allege facts sufficient to demonstrate that opt-in Plaintiffs are similarly situated to Plaintiff.  Additionally, Defendant argues that the statute of limitations period for the FLSA claim should be limited to two years because Plaintiff has failed to allege facts sufficient to show that Defendant's violation of the FLSA was willful.  *See* 29 U.S.C. § 255(a) (a cause of action for a minimum wage violation must be commenced within two years after the cause of action accrued, except if the cause of action arises out of a willful violation, in which case the statute of limitations period is three years).  Defendant also seeks to dismiss the state class action claim on the grounds that Plaintiff lacks standing to bring a class action except under Colorado state law.  Defendant argues that, even if the Court finds that Plaintiff has standing to bring class action claims under the laws of various other states, the Court should decline to exercise supplemental jurisdiction over the class action. The Court will address each argument in turn.

### A.   FLSA CLAIMS

The FLSA defines "wages," but does not address an employer's reimbursement of expenses.  However, "[Department of Labor] regulations are entitled to judicial deference, and are the primary source of guidance for determining the scope and extent

of exemptions to the FLSA," including expense reimbursement.  *Spadling v. City of Tulsa,* 95 F.3d 1492, 1495 (10th Cir. 1996).  Under 29 C.F.R. § 531.35, "the wage requirements of the [FLSA] will not be met where the employee 'kicks-back' directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee."  A kickback occurs when the cost of tools that are specifically required for the performance of the employee's particular work "cuts into the minimum or overtime wages required to be paid him under the Act."  *Id.*  Section 531.35 specifically incorporates § 531.32(c), which in turn incorporates § 778.217, which states:

> Where an employee incurs expenses on his employer's behalf or where he is required to expend sums solely by reason of action taken for the convenience of his employer, section 7(e)(2) [which provides that employee's regular rate does not include travel or other expenses incurred in furtherance of the employer's interest] is applicable to reimbursement for such expenses.  Payments made by the employer to cover such expenses are not included in the employee's regular rate (if the amount of the reimbursement reasonably approximates the expenses incurred).  Such payment is not compensation for services rendered by the employees during any hours worked in the workweek.

29. C.F.R. § 778.217(a). Therefore, an employee may claim that his wage rate was reduced below the minimum wage because the employer failed to make a reasonable approximation of his expenses in formulating its reimbursement policy. *See Darrow v. WKRP Mgmt. LLC*, No. 09-cv-01613, 2011 WL 2174496, at *3 (D. Colo. June 3, 2011) (unpublished).

1.      Plaintiff's Individual FLSA Claim

Plaintiff alleges that his under-reimbursed vehicle-related expenses constituted a kickback because Defendant failed to reasonably approximate his vehicle-related expenses and Plaintiff was specifically required to use and maintain a vehicle to benefit Defendant's business.  Plaintiff further alleges that this kickback led to Plaintiff's wage being reduced below the minimum wage.  Plaintiff supports his claims by asserting that he has documented vehicle-related expenses of $0.35 per mile, excluding wear-and-tear and depreciation of value.  Plaintiff also alleges that a reasonable estimate of his total vehicle-related expenses, including wear-and-tear and depreciation, would be $0.58 per mile, the 2008 IRS business mileage rate, which was the highest rate for all relevant time periods.  *See* IRS Announcement Ann. 2008-63, 2008 WL 2486517 (June 23, 2008).  Although Defendant does not appear to directly contest Plaintiff's individual FLSA claim, Defendant argues that Plaintiff's reliance on the IRS business mileage rate as a substitute for actual vehicle-related expenses is a conclusory allegation that must be disregarded.  However, the Court need not decide at this stage in the proceedings whether Plaintiff's reliance on the 2008 IRS business mileage rate is reasonable because the Court finds that Plaintiff may rely on his $0.35 per mile estimate and based on this estimate, Plaintiff, individually, has alleged facts sufficient to create the plausible inference that Defendant violated the FLSA.[4]

---

[4] Defendant does not argue that Plaintiff's $0.35 estimate should be disregarded. Additionally, the Court finds, as it did in *Darrow*, that Plaintiff may rely on a reasonable estimate of his vehicle-related expenses without knowing his exact expenses.  *See Darrow*, 2011 WL 2174496, at *3.

This Court finds that Plaintiff has stated a plausible claim that Defendant failed to reasonably approximate his vehicle-related expenses.  Plaintiff alleges that he was reimbursed at a rate of $0.96 per delivery on average from August 2008 to January 2009.  Plaintiff further alleges that he drove an average of five miles per delivery. Accepting these factual allegations as true, and using the estimate of Plaintiff's vehicle-related expenses of $0.35 per mile, Defendant's reimbursement formula under-reimbursed Plaintiff in the amount of $0.79 per delivery or $1.89 per hour in 2009 (($0.35 per mile x 5 miles per delivery) - $0.96 per delivery).  This amount of under-reimbursement is a large enough gap to support the claim that Defendant failed to reasonably approximate Plaintiff's expenses.  *See Wass (Wass I)*, No. 09-2254, 2010 U.S. Dist. LEXIS 141978, at *7 (D. Kan. Sept. 1, 2010) (finding an under-reimbursement of $1.62 per hour significant enough to support the claim that the defendant failed to reasonably approximate the plaintiff's expenses).

The Court further finds that Plaintiff has alleged facts sufficient to demonstrate that he was paid below the federal minimum wage as a result of the under-reimbursement.  Plaintiff alleges that he was paid $7.50 per hour from August 2008 to January 2009.   The federal minimum wage was $6.55 per hour during that time. If Plaintiff was paid $7.50 per hour, was reimbursed at a rate of $0.96 per delivery, and completed 2.4 deliveries per hour, then Plaintiff was compensated, on average, $9.80 per hour.  Based on the facts alleged in the SAC, Plaintiff incurred vehicle-related expenses in the amount of $4.20 per hour to complete 2.4 deliveries (2.4 deliveries x

9

($0.35 per mile x 5 miles per trip)).  After deducting Plaintiff's vehicle-related expenses from his wage, including the delivery reimbursement, Plaintiff alleges that he earned only $5.60 per hour ($9.80 - $4.20), which was $0.95 below the federal minimum wage during the relevant time period.  Therefore, the facts alleged in the Second Amended Complaint create the plausible inference that Defendant paid Plaintiff below the federal minimum wage as a result of Defendant's under-reimbursement of Plaintiff's vehicle-related expenses.

2.    FLSA Collective Action Claim

The FLSA permits a plaintiff to bring an action "against any employer . . . on behalf of himself . . . and other employees similarly situated."  29 U.S.C. § 216(b). Defendant argues that the Court should dismiss the FLSA collective action claim because (1) opt-in Plaintiffs have failed to allege facts sufficient to state a claim for an FLSA violation because they have not each provided an estimate of their vehicle-related expenses, and (2) opt-in Plaintiffs have failed to allege facts sufficient to demonstrate that they are similarly situated to Plaintiff.  For the following reasons, the Court finds that dismissal of the FLSA collective action claim is unwarranted.

To state an FLSA collective action claim, a complaint must allege facts sufficient to create the plausible inference that there is a group of individuals similarly situated to Plaintiff.  The Second Amended Complaint satisfies this requirement.  The phrase "similarly situated" is not defined in the FLSA under § 216(b).  However, in *Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001), the Tenth Circuit

approved a two step process used by a district court for determining whether opt-in

plaintiffs to a collective action were similarly situated to the named-plaintiff.[5]  The first

step, the notice stage, "require[s] nothing more than substantial allegations that the

putative class members were together the victims of a single decision, policy or plan."

*Thiessen*, 267 F.3d at 1102 (quoting *Bayles v. Am. Med. Response of Colo., Inc.*, 950

F. Supp. 1053, 1066 (D. Colo. 1996).  The notice stage analysis occurs before

discovery on a motion for conditional certification.  The second stage occurs at the

conclusion of discovery and applies a stricter standard for determining whether the opt-

in plaintiffs are similarly situated.

    Discovery has not yet concluded.  Therefore, the notice stage standard is the

appropriate measure of whether opt-in Plaintiffs have alleged facts sufficient to create

the plausible inference that they are similarly situated to Plaintiff.[6]  At the notice stage,

opt-in Plaintiffs "are not required to offer evidence that each person for whom [they] will

ultimately seek relief was a victim of the employer's discriminatory policy."  *Thiessen*,

267 F.3d at 1106 (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 360

(1977)).  In the instant case, opt-in Plaintiffs allege they were subjected to the same

---

[5] Although *Thiessen* directly addressed an Age Discrimination in Employment Act
("ADEA") collective action, the court noted that 29 U.S.C. § 626(b), which authorizes collective
actions under the ADEA, borrows the opt-in collective action mechanism of 29 U.S.C. § 216(b)
of the FLSA.  *Id.*  Therefore, the *Thiessen* analysis of the certification process of collective
actions under the ADEA applies here.

[6] Most courts determine whether opt-in plaintiffs are similarly situated in the context
of a motion for class certification.  However, Defendant's arguments on the instant Motion to
Dismiss can be addressed only through an analysis of whether opt-in Plaintiffs have shown
that they are similarly situated.

pattern or policy of unreasonable reimbursement that serves as the basis for Plaintiff's claim.  Therefore, the Court's inquiry is not whether each individual opt-in Plaintiff has stated a plausible claim for an individual FLSA minimum wage violation, but whether opt-in Plaintiffs have alleged facts sufficient to show that the under-reimbursement policy existed.  *See Thiessen*, 267 F.3d at 1106 ("[the] plaintiffs' 'burden is to establish that such a policy existed.'") (quoting *Teamsters*, 431 U.S. at 360).

The Court finds that opt-in Plaintiffs have met their burden.  Opt-in Plaintiffs have alleged that they, like Plaintiff, are delivery drivers for Defendant.  They allege that they incurred vehicle-related expenses similar to Plaintiff,[7] were all required to maintain legally safe vehicles as part of their jobs, were reimbursed at a flat rate that did not account for the distance driven, and that the reimbursement rates were all similar.[8]

Defendant notes that opt-in Plaintiffs' allegation that their vehicle-related expenses are similar to those incurred by Plaintiff appears contradictory to their admission that they do not know their actual vehicle-related expenses.  However, the Court has already found that it is plausible that individuals may estimate their vehicle-related expenses without knowing their actual expenses.

---

[7] Defendant contends that opt-in Plaintiffs do not know their vehicle-related expenses. However, opt-in Plaintiff's assert that they incurred vehicle-related expenses similar to Plaintiff. Although some of the opt-in Plaintiffs cannot show that they were paid below the minimum wage using the $0.35 per mile expense estimate that the Court used to calculate Plaintiff's under-reimbursement, opt-in Plaintiff's are not required to provide evidence that each of them was a victim of the policy at this stage.

[8] Opt-in Plaintiffs allege that none of the opt-in Plaintiff's were reimbursed more than $0.98 per delivery at any time.  Additionally, opt-in Plaintiffs, like Plaintiff, allege that they drove five miles per delivery on average.

Although Defendant argues that the opt-in Plaintiffs are not similarly situated to Plaintiff because their wages, driving conditions, cars, etc. vary, the predominance of individual questions is only relevant at the post-discovery stage of the collective action certification. *See Wass (Wass II)*, No. 09-2254, 2011 WL 1118774, at *6 (D. Kan. Mar. 28, 2011. Therefore, the Court finds that opt-in Plaintiffs have alleged facts sufficient to create the plausible inference that they are similarly situated because they were all subjected to Defendant's reimbursement policy.

3.     FLSA Collective Action Statute of Limitations Period

The FLSA provides a statute of limitations period of two years.  However, the FLSA extends the statute of limitations to three years if the defendant's violation was willful.  29 U.S.C. § 255(a).  The test for determining whether an FLSA violation was willful is whether the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]."  *Reich v. Monfort, Inc.*, 144 F.3d 1329, 1334 (10th Cir. 1998) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).  For the following reasons, the Court finds that Plaintiff has alleged facts sufficient to raise the plausible inference that Defendant willfully violated the FLSA.

Plaintiff has alleged a significant gap between the per delivery reimbursement and Plaintiff's actual expenses.  Furthermore, Plaintiff has alleged that he and other delivery drivers brought the issue of under-reimbursement to Defendant's attention, but Defendant did nothing to remedy the problem.  (Doc. # 144 at 29.)  This would illustrate that Defendant knew that under-reimbursement was an issue.  Additionally, Defendant

13

knew the reimbursement rate for each employee and had access to the number of

deliveries and the approximate distances driven by each employee per delivery.

Therefore, Defendant possessed the resources to evaluate whether the employees'

claims were true, but did not do so, showing reckless disregard for whether their

conduct was prohibited by the FLSA.  *See Wass v. NPC Int'l, Inc. (Wass III)*, No. 2:09-

cv-02254, slip op. at 11 (D. Kan. June 24, 2010) (unpublished) (finding that the plaintiff

had raised the plausible inference that the defendant's FLSA violation was willful where

the defendant had access to information that would allow it to calculate its drivers'

vehicle related expenses, but failed to do so).  Therefore, the Court finds that Plaintiff

has alleged facts sufficient to create the plausible inference that Defendant's alleged

FLSA violation was willful.[9]

## C.    CLASS ACTION CLAIMS UNDER THE LAWS OF VARIOUS STATES

In Count II of the SAC, Plaintiff brings a class action claim under the laws of

various states, "on behalf of a class of all current and former delivery drivers employed

by Pizza Hut during the applicable limitations periods in the states of Arizona, Arkansas,

---

[9] Defendant cites three cases where district courts have found that the FLSA plaintiffs failed to allege suffcient facts to support a claim for a willful FLSA violation.  These cases are readily distinguishable.  In *Jones v. Casey's General Stores,* 538 F. Supp. 2d 1094, 1102 (S.D. Iowa 2008)*,* the court found that the plaintiff could not claim that the defendant willfully violated the FLSA because the plaintiff did not state a claim for an FLSA violation to begin with.  In the instant case, unlike in *Jones*, the Court has already determined that Plaintiff has stated a claim for an FLSA violation.  In *Cohen v. Allied Steel Buildings, Inc.*, 554 F. Supp. 2d 1331, 1335 (S.D. Fla. 2008), and *Colson v. Avnet, Inc.*, 687 F.Supp.2d 914, 921 (D. Ariz. 2010), the courts found that the plaintiffs had not alleged facts sufficient to show willful violations of the FLSA because the plaintiffs' only references to willfulness were conclusory allegations that were without any factual support or elaboration.

California, Colorado, the District of Columbia, Florida, Illinois, Iowa, Maryland,

Massachusetts, Michigan, Missouri, Nevada, Ohio, Pennsylvania, Washington and

West Virginia." (Doc. # 144 at 17.)[10]  Defendant asserts that the class action should be

dismissed because Plaintiff lacks standing to assert claims under the laws of states in

which Plaintiff never worked or resided.[11]  Plaintiff responds that Defendant's standing

argument is premature and that the Court should resolve the issue of standing after the

class certification stage.  Alternatively, Plaintiff contends that he does have standing.

     1.    <u>Whether Class Certification is Logically Antecedent to The Issue of Standing</u>

Plaintiff contends that the Court should address the issue of standing after class

certification because a class has a legal status of its own that is separate from the class

representative.  However, the Court finds that the issue of Plaintiff's standing is

appropriately addressed at this time.  Whether a Plaintiff has Article III standing is a

threshold issue that "determine[s] the power of the court to entertain the suit."  *Warth*

*v. Seldin*, 422 U.S. 490, 498 (1975).  Plaintiff relies primarily on the Supreme Court's

decisions in *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), and *Amchem Products,*

*Inc. v. Windsor*, 521 U.S. 591 (1997).  In these cases*,* the Supreme Court found it

appropriate to defer the issue of standing because class certification was "logically

---

[10]  The Court interprets Count II of the Second Amended Complaint to be brought by Plaintiff on behalf of class, not by Plaintiff as an individual.  Furthermore, the Court interprets the Count II of the Second Amended Complaint to be a single class action class encompassing violations of all of the states' laws listed in the SAC, not seventeen separate class actions each based on the laws of one state.

antecedent" to the issue of standing in those specific factual scenarios.  *Ortiz*, 527 U.S. at 831; *Amchem*, 521 U.S. at 613.  However, these decisions do not **require** courts to defer the standing analysis until after the class certification stage.  *See Ortiz,* 527 U.S. at 831 (finding that class certification **"may** properly be treated before Article III standing", but a court ordinarily "must be sure of its own jurisdiction before getting to the merits.") (emphasis added)*; Amchem*, 521 U.S. at 612 (finding that because "[class certification] resolution **here** is logically antecedent to the existence of any Article III issues, it is appropriate to reach them first.") (emphasis added).

In this case, the Court finds that class certification is not logically antecedent to the issue of standing.  *See Easter v. Am. W. Fin*., 381 F.3d 948, 962 (9th Cir. 2004) (noting that *Ortiz* "examined class issues before the question of Article III standing . . . in the very specific situation of a mandatory global settlement.").  In *Ortiz* and *Amchem*, the Supreme Court dealt with the issue of whether proposed class members who were not yet parties to the case would have standing if the class were certified.  In those cases, the standing issue would become relevant only if the class was certified.  *See Amchem*, 521 U.S. at 612 (agreeing with the lower court that the standing issue "would not exist but for the [class-action] certification.").  Conversely, this case presents the question of whether the only named plaintiff has standing to bring claims under the laws of various states.  This question is relevant whether or not the class is certified.

The only circuit decision cited by Plaintiff in support of his argument is *Payton v. County of Kane*, 308 F.3d 673, 680 (7th Cir. 2002).[12]  *Payton* is factually distinguishable from the instant case because *Payton* considered a class of individuals all of whom had suffered the same injury under **the same statute**.  *Id.*  Moreover, the court in *Payton* did not address whether the issue of class certification was logically antecedent to standing because it interpreted *Ortiz* and *Achem* as requiring courts to address class certification before standing.  *Id.* at 680.  As discussed above, this Court disagrees that *Ortiz* and *Amchem* mandate that courts consider standing after addressing class certification and concludes that, in this case, it is appropriate to address standing prior to class certification.  *See Easter,* 381 F.3d at 962 (holding that *Ortiz* "does not require courts to consider class certification before standing.")*; Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002) (holding that the "district court erred by not demanding such a showing [of standing] before it certified the class. Had it done so, it would have found that plaintiffs had demonstrated neither injury nor causation."); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 152-56 (E.D. Pa. 2009) (finding that "earlier precedents, combined with the constricting language of *Ortiz* and *Amchem* and the unique posture of those global settlement cases, demonstrate that a standing analysis should not be deferred in this case."); *Thomas v. Metro. Life Ins. Co.*, 540 F. Supp. 2d 1212, 1225

---

[12]  Plaintiff also cites *United States ex rel. Burlbaw v. Orenduff*, 548 F.3d 931 (10th Cir. 2008).  However, *Burlbaw* appears to have addressed whether the merits of a case were logically antecedent to the issue of Eleventh Amendment immunity in a specific factual scenario, and not whether class certification is logically antecedent to the issue of standing.  *Id.* at 942.

(W.D. Okla. 2008) ("Plaintiffs have not persuaded the court that traditional rules requiring determination of Article III standing issues before class certification issues should not be followed here.").

      2.    <u>Whether Plaintiff Lacks Standing</u>

Defendant argues that Plaintiff lacks standing to assert claims under the laws of states other than Colorado because Plaintiff has never worked or resided in those other states.  The Court agrees.  The determination of Article III standing "focuses on whether the plaintiff is the proper party to bring this suit."  *Raines v. Byrd* 521 U.S. 811, 818 (1997).  "That a suit may be a class action, however, adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that the injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."  *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 (1976).  Each claim must be analyzed separately for standing.  *See Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987).

It is well established that a plaintiff does not have standing to allege claims on his own behalf under the laws of states where he has never lived or resided because he has not suffered an injury under those laws, nor is he protected by those laws.  *See Glass v. Kemper Corp.*, 133 F.3d 999, 1000 (7th Cir. 1998) (holding that the lower court's dismissal of the statutory claim was correct because the plaintiff was not protected by Illinois' Wage Payment and Collection Act because Plaintiff never resided

or worked in Illinois); *Mitchell v. Abercrombie & Fitch*, No. C2-04-306, 2005 WL

1159412, at *3 (S.D. Ohio May 17, 2005) (holding that Ohio Minimum Fair Wage

Standards Act could not be applied to regulate the plaintiff's out-of-state employment).

Other courts, however, have treated the issue of whether a named plaintiff has standing

to bring claims on his own behalf under the laws of states where the named plaintiff has

never lived or resided as an issue that is distinguishable from whether a plaintiff has

standing to allege claims on behalf of a class under the laws of states where he has

never lived or resided.

   Plaintiff asserts that multiple decisions support the proposition "that *Ortiz* and

*Amchem* dictate that a plaintiff may bring multi-state class claims based on the law of

his or her own state and other states."[13]   *See In Re Bayer Corp. Combination Aspirin*

*Prods. Mktg. & Sales Practices Litig.*, 701 F. Supp. 2d 356, 377 (E.D.N.Y. 2010).   *In Re*

*Bayer* found that the appropriate question when a named plaintiff of a proposed class

action brings claims under the laws of other states is not whether the plaintiff has

standing, but whether the plaintiff is an adequate representative.[14]  *Id.*  However, this

---

   [13]  Most of the legal authority cited by Plaintiff in support of this proposition appears irrelevant.  For example, Plaintiff cites *James v. City of Dallas, Texas*, 254 F.3d 551 (5th Cir. 2001), which involved a class action of African American individuals seeking a permanent injunction against a city and does not appear to involve the laws of multiple states.  Plaintiff also cites *Rivera* where the court found that standing was lacking on other grounds and did not reach the issue of whether individuals residing in all fifty states could bring claims under Texas law.  283 F.3d at 317.

   [14] Even if this Court agreed with *In Re Bayer* that this issue is actually an adequacy of representation issue couched as a standing issue, the Court is highly skeptical that Plaintiff would be an adequate representative given that he was never bound by the laws of the other states.  Moreover, if Plaintiff seeks leave to amend the Second Amended Complaint to add a

Court declines to follow the *In Re Bayer* approach because it would allow Plaintiff to engage in lengthy and expensive discovery with respect to alleged violations of state laws when the Court cannot be certain that any individual suffered an injury under those laws. *See In Re Wellbutrin,* 260 F.R.D. at 155 (finding that certifying a class action without named plaintiffs who have standing to assert each claim would "allow named plaintiffs in a proposed class action, with no injuries in relation to the laws of certain states referenced in their complaint, to embark on lengthy class discovery with respect to injuries in potentially every state in the Union.").

The Court finds more persuasive the numerous cases holding that named plaintiffs lack standing to bring claims on behalf of a class under the laws of states where the named plaintiffs have never lived or resided. *See Griffin v. Dugger,* 823 F.2d 1476, 1483 (11th Cir. 1987) (finding that "each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim."); *In Re Checking Account Overdraft Litig.,* 694 F. Supp. 2d 1302, 1325 (S.D. Fla. 2010) (holding that the "[p]laintiffs may only assert a state statutory claim if a named plaintiff resides in that state."); *In Re Potash Antitrust Litig.,* 557 F. Supp. 2d 907, 924 (N.D. Ill. 2009) (dismissing claims under the laws of states where the plaintiffs were not residents for lack of standing because the

---

named representative from each state, the Court, without prejudging the question, notes the obvious fact that it would be difficult for the Court to adjudicate claims under the laws of all of the states listed in the SAC, especially in light of the discrepancies between the states' laws.

plaintiffs did not allege personal injuries in those states); *In Re Wellbutrin*, 260 F.R.D. at 157 (finding that the "allegations present no facts that would connect injuries specific to the plaintiffs, as opposed to injuries against competitors and purchasers nationwide, to any cause arising in states where no named plaintiff is located . . ."); *Self v. TPUSA, Inc.*, No. 2:08-cv-395, 2009 WL 273326, at *2 (D. Utah Feb. 4, 2009) (unpublished) (holding that the case may only proceed "based on the laws of the jurisdictions in which their claims are based."); *Thomas v. Metro. Life Ins. Co.*, 540 F. Supp. 2d 1212, 1226 (W.D. Okla. 2008) ("[T]he court's analysis requires dismissal of any state law claims alleged under the laws of any states where a particular named plaintiff is not a resident.").

For the foregoing reasons, the Court finds that Plaintiff lacks standing to bring claims under state laws to which Plaintiff has never been subjected and the class action claim must therefore be dismissed for lack of standing.[15]  Given this lack of standing, the Court need not address Defendant's other arguments for dismissal of the class action, namely whether this Court has subject matter jurisdiction under the Class Action Fairness Act ("CAFA"), or whether it should exercise supplemental jurisdiction if CAFA does not confer jurisdiction.

---

[15]  Although Plaintiff would likely have standing to bring a class action under the laws of Colorado, the class action must be dismissed in its entirety because Count II of the Second Amended Complaint brings a single class action under the laws of seventeen states.  Therefore, Plaintiff has not asserted a claim for a class action under the laws of Colorado alone.

## IV.  **CONCLUSION**

Based on the foregoing, Defendant's Motion to Dismiss (Doc. # 147) is DENIED in part and GRANTED in part.  Specifically, Count II is DISMISSED WITHOUT PREJUDICE for lack of standing.  Defendant's Motion to Dismiss with regard to all other aspects of Plaintiff's Second Amended Complaint is DENIED.

DATED:  July __14__, 2011

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge