**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 09-cv-01632-CMA-BNB

MARK SMITH, individually and on behalf of other similarly situated persons,

     Plaintiff,

v.

PIZZA HUT, INC.,

     Defendant.

---

**ORDER GRANTING MOTION FOR CONDITIONAL
COLLECTIVE ACTION CERTIFICATION**

---

This matter is before the Court on Plaintiffs' Amended Motion for Conditional

Collective Action Certification.  (Doc. # 219.)  The named Plaintiff, Mark Smith, brings

this action on his own behalf and on behalf of all other similarly situated pizza drivers

employed by Defendant Pizza Hut, Inc.[1]  Plaintiffs allege that Defendant violated the

Fair Labor Standards Act ("FLSA") by failing to sufficiently reimburse its delivery drivers

for vehicle-related expenses and, thereby, reducing the wages of its drivers below the

federal minimum wage.  In the instant motion, Plaintiffs request that the Court

conditionally certify this FLSA claim as a collection action, as authorized by 29 U.S.C.

§ 216(b).

---

[1]  Since the filing of this case, numerous other delivery drivers have filed notices of
consent to join in this action even though it has not yet been certified as a collective action.  The
Court will refer to Plaintiff Smith and the allegedly similarly situated pizza drivers collectively as
"Plaintiffs."

# I. BACKGROUND

## A.   FACTS[2]

Defendant operates a national chain of pizza restaurants that provide delivery services.  Although Defendant has owned and operated significantly more stores during the previous three years, Defendant claims that it currently owns and operates approximately 400 stores across the nation.  (Doc. ## 231-1 at 14:11-13; 226-1.) Defendant employs delivery drivers who are primarily responsible for delivering pizzas and other food items to customers' homes and workplaces.  As a condition of their employment, Defendant requires these drivers to maintain safe, legally operable, and insured automobiles when making deliveries.  (Doc. # 219-5 at 25:10-14.)  Prior to late 2010, Defendant paid all of its delivery drivers a base wage that was at or above the federal minimum.[3]  In addition to the base wage, Defendant reimburses all of its delivery drivers for their vehicle-related expenses on a flat per delivery basis.  (*Id.* at 64:3-65:9.) In other words, Defendant's delivery drivers are given the same amount of reimbursement regardless of the distance traveled on a particular delivery.

---

[2]  Additional facts related to this case are set forth in the Court's Order denying in part and granting in part Defendant's Motion to Dismiss (hereinafter, the "July 14, 2011 Order"). (Doc. # 201.)  The July 14, 2011 Order is also available at *Smith v. Pizza Hut, Inc.*, No. 09-cv-01632, 2011 WL 2791331 (D. Colo. July 14, 2011).

[3]  Starting in late 2010, Pizza Hut began transitioning its drivers to a federal "tip credit" minimum wage system.  *See* 29 U.S.C. § 203(m) (permitting an employer to take a "tip credit" toward its minimum wage obligation for tipped employees equal to the difference between the required cash wage (which must be at least $2.13) and the federal minimum wage).

Defendant calculated the amount of reimbursement by multiplying 3.75 (the average length in miles of a delivery per round trip[4]) by the average cost per mile of driving (differs depending on region) and dividing that amount by the average orders per dispatch.  (Doc. # 219-5 at 102:4-9.)  This formula was used to calculate the reimbursement amounts for all of Defendant's drivers.  Notably, Defendant generally assumed the same average round trip for its drivers, irrespective of the "trade area" of the store in which they worked.[5]  (*Id.* at 102:16-22.)

Ultimately, Plaintiffs contend that their compensation (base wages + per delivery reimbursement amount) minus the vehicle-related costs that they incurred as a condition of their employment resulted in their hourly wages falling below the federal minimum wage in violation of the FLSA.  (Doc. # 219 at 9.)  By way of example, Plaintiff Smith alleges in the Second Amended Complaint that he was paid $7.50 per hour from August 2008 to January 2009, during which time the federal wage was $6.55 per hour. (Doc. # 144, ¶ 29.)  As reimbursement for his vehicle-related expenses, Plaintiff Smith alleges that he was paid, on average, approximately $0.96 per delivery, and he experienced an average round-trip delivery distance of approximately five miles.  (Id., ¶ 32-33.)  Thus, Plaintiff Smith was allegedly reimbursed at a rate of $0.19 per mile ($0.96 per delivery/ 5 miles per delivery).  However, Plaintiff Smith alleges that, at

---

[4]  Defendant asserts that its delivery drivers travel approximately 3 miles per trip, but that it used the 3.75 miles figure to be conservative.  (Doc. # 231 at 8.)

[5]  Each one of Defendant's stores has a different "trade area," which is the geographic boundaries within which the store will deliver pizzas and other food items to customers.  For example, the trade area for store number 301043 (Bonner, Kansas) was 31.39 miles.  The trade area for store 726465 (St. Louis, Missouri) was 5.70 miles. (Doc. # 231-2 , ¶¶ 19-20.)

minimum, he incurred vehicle-related expenses in the amount of $0.35 per mile; thus,

every mile driven on the job allegedly decreased his wage by at least $0.16, or $0.80

per delivery ($0.16 x 5).  (*Id.,* ¶ 36.)  As Plaintiff Smith claims that he averaged

approximately 2.4 deliveries per hour worked, Plaintiff Smith allegedly "kicked back"[6]

to Pizza Hut approximately $1.92 per hour worked, which, if true, would have reduced

his wage below the federal minimum.[7]  Although the various opt-in Plaintiffs received

different base wages, all Plaintiffs have declared that Pizza Hut's per delivery

reimbursement policy insufficiently reimbursed them for their vehicle-related expenses

and resulted in their wages falling below the federal minimum.[8]  (*See* Declarations of

Opt-in Plaintiffs, Doc. # 241-2.)

## B.    PROCEDURAL HISTORY

        This case was originally commenced on July 9, 2009.  (Doc. # 1.)  After the

original complaint was dismissed without prejudice on March 11, 2010 (Doc. # 98),

Plaintiffs filed an amended complaint twenty days later.  (Doc. # 99.)  Subsequently,

Defendant filed a second motion to dismiss.  (Doc. # 107.)  Plaintiffs sought leave

to amend on July 20, 2010 (Doc. # 131), and their Second Amended Complaint

---

[6]  A kick back occurs when the cost of tools that are specifically required for the performance of the employee's particular work "cuts into the minimum or overtime wages required to be paid to him under the [FLSA]." 29 C.F.R. § 531.35.

[7]  Plaintiff also alleges that his documented expenses understates his actual expenses because he did not account for other expenses such as depreciation or wear-and-tear on parts that had not yet failed or needed to be replaced.  Using the IRS business mileage reimbursement rate ($0.585 per mile during the relevant time period), Plaintiff Smith would have allegedly kicked back to Pizza Hut approximately $4.68 per hour worked.

[8]  Opt-in Plaintiffs declare that, on average, they drove at least four miles per delivery. (Doc. # 241-2.)

(the "SAC") was accepted as filed on August 10, 2010 by Magistrate Judge Boyd N. Boland.  (Doc. # 143, 144.)  Defendant then filed a third motion to dismiss.  (Doc. # 147.)  On July 14, 2011, the Court issued an Order granting in part and denying in part the motion to dismiss the SAC.  (Doc. # 201.)  Specifically, the Court dismissed Count II of the SAC, in which Plaintiffs asserted a class action claim for violation of state minimum wage laws, on the basis that Plaintiffs lacked standing to bring that claim.  The Court denied the motion to dismiss Plaintiff Smith's individual FLSA claim as well as Plaintiffs' FLSA collective action claim.  With regard to the FLSA collective action claim, the Court found that Plaintiffs "have alleged facts sufficient to create the plausible inference that they are similarly situated because they were all subjected to Defendant's reimbursement policy."  (Doc. # 201 at 13.)

In the instant motion, filed on August 31, 2011, Plaintiffs seek conditional certification of the present action as a collective action under § 216(b) of the FLSA, with the class consisting of current and former delivery drivers who were employed by Defendant during the last three years.  (Doc. # 219 at 1.)  Plaintiffs also seek an order requiring Defendant to provide to Plaintiffs' counsel, within fourteen days, the names, last known addresses, and dates of employment for each potential plaintiff, as well as the store location and number where each potential plaintiff worked.  Additionally, Plaintiffs seek permission to send notice and consent forms (Doc. ## 219-8, 219-9) to potential plaintiffs, and request an order requiring Defendant to post the notice in the employee areas of their stores until the opt-in period closes.

Defendant responded to the instant motion on October 5, 2011, and Plaintiffs replied on November 2, 2011.  (Doc. ## 231, 241.)

## II. <u>LEGAL STANDARD</u>

Section 216(b) of the FLSA authorizes a collective action to proceed under the FLSA for minimum wage violations.  The statute provides that an action "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b). Collective actions benefit the judicial system by enabling the "efficient resolution in one proceeding of common issues of law and fact . . . ."  *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).  Further, a collective action gives similarly situated plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of resources." *Id.*

The Tenth Circuit has approved the use of a two-step process for determining whether the putative class members are similarly situated to the named plaintiff.  *See Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102-1105 (10th Cir. 2001). At the first step, prior to discovery, the district court makes a "notice stage" determination of whether the plaintiffs are similarly situated.  For conditional certification at the notice stage, the Tenth Circuit "require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."  *Id.* at 1102 (quotation omitted).  "This initial step creates a lenient standard which typically results in conditional certification of a representative class."  *Renfro v. Spartan Computer Servs., Inc.*, 243 F.R.D. 431, 432 (D. Kan. 2007).  At this notice stage, "a court need only consider the substantial allegations of the complaint along with any supporting affidavits or declarations."  *Id.* at 434.

The second step for class certification under § 216(b) demands a higher level of scrutiny.  At the second step, which occurs after discovery is complete and usually prompted by a motion to decertify, a district court examines, inter alia, any disparate factual and employment settings of the individual plaintiffs, the various defenses available to defendant that appear to be individual to each plaintiff, and fairness and procedural considerations.  *See Thiessen*, 267 F.3d at 1103.

## III.  ANALYSIS

### A.    CERTIFICATION STANDARD

The threshold question before the Court is which standard for certification applies at this time.  Plaintiffs contend that the lenient "notice stage" applies, whereas Defendant contends that the Court should apply the more rigorous second stage review.

As Defendant correctly points out, the notice stage standard is typically applied early in the case before significant discovery has occurred.  *See, e.g., Brown v. Money Tree Mortg., Inc.*, 222 F.R.D. 676, 680 (D. Kan. 2004) (considering motion for conditional class certification filed the day before the court's initial scheduling conference).  This case, in contrast, is well over two years old and partial discovery has already been conducted.[9]  Because Plaintiffs have already conducted some discovery, Defendant contends that the Court should bypass the notice stage standard and proceed directly to the more rigorous second stage review.

---

[9]  In particular, Defendant asserts that it has produced more than 5,100 pages of documents, and responded to Plaintiffs' written document requests and interrogatories. Additionally, several depositions have already been taken by both parties.

Defendant's position finds some support in several district court decisions from outside the Tenth Circuit. In those decisions, the courts have applied stricter standard of review to motions for conditional class certification when significant discovery had been conducted. *See Davis v. Charoen Pokphand (USA), Inc.*, 303 F. Supp. 2d 1272, 1276 (M.D. Ala. 2004) (applying a "more rigorous standard" where plaintiffs had conducted discovery and filed supplemental evidence in support of their motion for class certification); *Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1274 (M.D. Ala. 2004) (departing from lenient notice stage analysis where "the court has been presented with fairly extensive evidence on the issue of whether putative class members are similarly situated.").

The Court, however, is not aware of any federal court in the Tenth Circuit that has bypassed the initial notice stage standard on the basis that some discovery had been conducted. Rather, courts within the Tenth Circuit have consistently declined invitations to proceed directly to the more rigorous second stage analysis. *See, e.g., Gieseke v. First Horizon Home Loan Corp.*, 408 F. Supp. 2d 1164, 408 F. Supp. 2d 1164, 1166-67 (D. Kan. 2006); *Pack v. Investools, Inc.*, No. 09-cv-1042, 2011 WL 3651135, at *3 (D. Utah Aug. 18, 2011) (unpublished). In *Gieseke*, the court found that bypassing the first stage of class certification was inappropriate even though the parties had taken multiple depositions and the defendant had produced almost 6,000 documents. *See* 408 F. Supp. 2d at 1166-67. Similarly, the court in *Pack* declined to bypass the notice stage standard, even though the defendant had provided over 8,874 documents and responded to Plaintiff's interrogatories and requests for admissions. *See* 2011 WL 3651135, at *3.

8

Moreover, as both *Gieseke* and *Pack* have emphasized, following both steps of *Thiessen's* two-step approach results in the least risk of prejudice to both parties. "[S]hould the court bypass tier one entirely, some potential plaintiffs might not become aware of the lawsuit and would not have an opportunity to join the suit." *Id.* (quoting *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 468 (N.D. Cal. 2004)). Thus, bypassing the notice stage could result in significant prejudice to Plaintiffs. *See id.* Measured against this possible prejudice to Plaintiffs, delaying the second stage review risks little harm to Defendant, who will be free to move for decertification after the close of discovery. *See Pack*, 2011 WL 3651135, at *3; *Kress v. PricewaterhouseCoopers, LLP*, 263 F.R.D. 623, 630 (E.D. Cal. 2009).

In harmony with other courts in this Circuit, the Court finds that bypassing the initial notice stage would be inappropriate at this time because it is undisputed that discovery has not yet concluded. Thus, Plaintiffs have not had full opportunity to discover evidence that may help it satisfy the more demanding second-step standard. Although some discovery has taken place, the Court "cannot conclude that the evidence is representative of what [P]laintiffs would present given further discovery." Gieseke, 408 F. Supp. 2d at 1167.

**B.     PLAINTIFFS' REQUEST FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION**

Plaintiffs argue that they have met their burden of presenting substantial allegations that the proposed class members were "together the victims of a single decision, policy, or plan." *Thiessen*, 267 F.3d at 1102. Plaintiffs' argument is supported by the decisions of numerous district courts, as well as this Court, that have considered

motions for collective action certification under the FLSA brought by plaintiff delivery drivers against defendant pizza companies for minimum wage violations.  In every case, courts have conditionally certified a collective action.  *See Darrow v. WKRP Mgmt., LLC*, No. 09-cv-1632, 2012 WL 638119 (D. Colo. Feb. 28, 2012) (unpublished); *Perrin v. Papa John's Int'l, Inc.*, No. 09CV01335, 2011 WL 4089251 (E.D. Mo. Sept. 14, 2011) (unpublished); *Bass v. PJComn Acquisition Corp.*, No. 09-cv-01614, 2010 WL 3720217, at *2 (D. Colo. Sept. 15, 2010) (unpublished); *Wass v. NPC Int'l, Inc.*, No. 09-2254, 2011 WL 1118774, at *4 (D. Kan. Mar. 28, 2011) (unpublished); *Luiken v. Domino's Pizza, LLC*, No. 09-516, 2010 WL 2545875 (D. Minn. June 21, 2010) (unpublished).

Defendant contends that these numerous, on-point decisions are undermined by the Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011), which set forth a heightened standard for class certification under Fed. R. Civ. P. 23. (Doc. # 231 at 29.)  Defendant has not cited a single case in which a court has applied the Dukes standard to an FLSA claim brought under § 216(b), and the Court has found none upon independent investigation.  Rather, numerous courts have rejected the argument that Dukes alters the standard to certify a FLSA collective action.  *See Spellman v. Am. Eagle Express, Inc.*, No. 10-1764, 2011 WL 4014351, at *1 n.1 (E.D. Pa. July 21, 2011) (finding that Dukes did not affect the Court's analysis of whether collective action plaintiffs had shown that they were "similarly situated"); *Sliger v. Prospect Mortg., LLC*, No. S-11-465, 2011 WL 3747947, at *2 n.2 (E.D. Cal. Aug. 24, 2011) (same); *Creely v. HCR ManorCare, Inc.*, No. 09 CV 2879, 2011 WL 3794142, at *1 (N.D. Ohio July 1, 2011) (same).

In this Court's July 14, 2011 Order, the Court found that "Plaintiffs have alleged facts sufficient to create the plausible inference that they are similarly situated because they were all subjected to Defendant's reimbursement policy." *See Smith*, 2011 WL 2791331, at *6. Nothing has changed that would alter that finding. As noted in the July 14, 2011 Order, Plaintiffs have alleged that the members of the proposed class held the same job, shared the same job duties, were paid at or near the minimum wage, incurred automobile costs in delivering pizzas, and were reimbursed by Defendant pursuant to the same flat per delivery system. *See id.* at *6. These allegations remain sufficient to meet Plaintiffs' limited burden at the notice stage. Moreover, in support of the present motion, Plaintiffs have submitted signed declarations that Defendant's reimbursement policy was inadequate and resulted in their wages falling below the federal minimum. (Doc. # 241-2.) Plaintiff's allegations are also supported by the deposition testimony of one of Pizza Hut's corporate executives, Erika Burkhardt, who testified that Pizza Hut employs the same set per delivery reimbursement policy in each of its restaurants. (Doc. # 219-5 at 64:23-25.)

Defendant vigorously argues that opt-in Plaintiffs are not similarly situated to Plaintiff Smith because of variances in their individual circumstances. However, in the July 14, 2011 Order, this Court previously explained that "the predominance of individual questions is only relevant at the post-discovery stage of the collective action certification." Smith, 2011 WL 2791331, at *6; *see also Perrin*, 2011 WL 4089251, at *4 ("That the reimbursement methodology [Defendant's] used might vary over time and from location to location, does not mean that the named [p]laintiff and the putative class members are not similarly situated."). The Court acknowledges that the plaintiff

delivery drivers were paid different base wages and had different automobile expenses; however, this appears relevant only insofar as it would relate to the calculation of damages for each individual plaintiff.  Such potential differences in the calculation of damages "are not sufficient to preclude joining the claims in one action." *Sanchez v. La Cocina Mexicana, Inc.*, No. 09 Civ. 9072, 2010 WL 2653303, at *1 (S.D.N.Y. July 1, 2010; *see also Perrin*, 2011 WL 4089251, at *5 (noting that "[w]hether a particular plaintiff actually received less than the required minimum wage is a factual question" that should not be addressed at the conditional certification stage).  The mere possibility that some members of the proposed class may have different damages (or no damages at all) is not reason to refuse to notify all potential class members in the first instance. *See Kautsch v. Premier Commc'ns*, 504 F. Supp. 2d 685, 690 (W.D. Mo. 2007) ("[A]t this stage in the litigation, justice is most readily served by notice reaching the largest number of potential plaintiffs.").  Thus, the Court finds that Plaintiffs have provided "substantial allegations" that the potential class members were "together the victims of a single decision, policy, or plan." *Thiessen*, 267 F.3d at 1102.

## C.    PARAMETERS OF THE CLASS

Having determined that conditional certification of a class is appropriate, the Court turns to the issue of defining the parameters of the putative class.  Plaintiffs assert that the class consists of all delivery drivers employed by Pizza Hut during the last three years, plus 57 days of tolling as agreed upon by the parties.  (Doc. # 241 at 14-15.)  Defendant contends that the parameters of Plaintiffs' proposed class should be temporally and geographically limited.  (Doc. # 231 at 29-31.)

First, Defendant argues that the parameters of the class should be temporally limited because of Defendant's transition to the federal "tip credit" minimum wage system in late 2010 and early 2011.  The Court perceives no merit to this argument. This case is based on Plaintiff's allegation that Defendant's company-wide reimbursement policy did not sufficiently reimburse Plaintiffs for their vehicle-related expenses.  Although Defendant has apparently transitioned to the "tip credit" system, Defendant has maintained its per delivery reimbursement policy.  Defendant fails to explain why the transition to the "tip credit" program means that its drivers were no longer the victims of a single reimbursement policy when the challenged policy remained unchanged.[10]

Defendant also contends that the class should be temporally limited because "Plaintiff seeks certification of a class dating back to July 6, 2006." (Doc. # 231 at 30.) However, Plaintiff is not seeking certification of such a class.  Rather, Plaintiff requests certification of a class of drivers who were employed by Defendant in the three years and 57 days prior to the date of this Order.[11]  (Doc. # 241 at 14-15.)  Although an FLSA action is usually "commenced" on the day the complaint was filed (July 9, 2009), in the case of a collective action, such as this one, an individual plaintiff's action "is con-

---

[10]  It is unclear to the Court what, if any, effect the transition to the "tip credit" program has on Plaintiffs' claims as it does not appear to affect Defendant's per delivery reimbursement policy.  It remains to be seen whether this change may later require the Court to split Plaintiffs into two sub-classes; however, at this stage in the proceedings, it is not reason to limit the class.

[11]  Although the statute of limitations for Plaintiffs' claim is three years, Defendant agreed to toll the statute of limitations from the start of a stay entered at its request on December 8, 2010 (Doc. # 174) until entry of the scheduling order on February 3, 2011  (Doc. # 185), a period of 57 days.  (*See* Doc. # 241-3.)

sidered to be commenced when a plaintiff files a written consent." *Baden-Winterwood v. Life Time Fitness*, 484 F. Supp. 2d 822, 826 (S.D. Ohio 2007) (citing 29 U.S.C. § 256(b)). Thus, the three-year and 57-day period properly runs from the date of the Court's order conditionally certifying the class. *See Perrin*, 2011WL 4089251, at *5 (certifying a class consisting of delivery drivers employed by the defendant within three years of the date of its order granting the plaintiffs' motion for conditional certification); Wass, 2011 WL 1118774, at *7 ("the Court certifies a collective action class consisting of all delivery drivers employed by defendant at any time in the three years preceding the date of [its order conditionally certifying the class].").

Defendant also argues that the class should be geographically limited because the plaintiffs who have already filed notices of consent to join the action were employed in only six of Defendant's 42 regions.[12]   (Doc. # 231 at 30.) The Court rejects this suggestion. As Defendant's corporate executive testified in her deposition, Defendant's reimbursement policies are implemented on a company-wide basis. Regardless of geographic region, Defendant's delivery drivers are subject to the same reimbursement policy and receive reimbursements based on the same general formula (although the amount of reimbursement may vary). The fact that delivery drivers from every region have not yet opted into this action does not mean that a nationwide class cannot exist.

## D.   NOTICE TO CLASS MEMBERS

In light of the Court's conclusion that conditional certification of this FLSA collective action is appropriate, Plaintiffs may disseminate notice and consent forms to

---

[12]  Given the fact that the putative class members have not yet been notified, it is not surprising that there is not yet an opt-in plaintiff from every geographical region.

potential class members.  *See Hoffman-La Roche*, 493 U.S. at 169-70.  Plaintiffs have

submitted proposed notice and consent forms for the Court's review.  (Doc. ## 219-8;

219-8.)  "Under the FLSA, the Court has the power and duty to ensure that the notice is

fair and accurate, but it should not alter plaintiff's proposed notice unless such alteration

is necessary."  *Lewis v. ASAP Land Exp., Inc.*, No. 07-CV-2226, 2008 WL 2152049, at

*2 (D. Kan. May 21, 2008) (unpublished).  Defendant's objections (Doc. # 231 at 31-33)

and the Court's rulings therein are as follows:

      1.    Defendant objects to the language in the Re: line of the proposed notice,

in which Plaintiffs assert the lawsuit is about "Alleged Inadequate Reimbursement of

Expenses/Unpaid Wages."  Defendant also objects to language in Box # 2, which states

that "the lawsuit is about whether Pizza Hut is required by law to pay delivery drivers for

automobile expenses which caused them to receive net wages."   Defendant contends

that Plaintiffs' statements are not correct because the case is about whether the

putative class members were paid the federal minimum wage.

      The Court agrees with Defendant that the disputed language is not accurate and

SUSTAINS these specific objections.  Plaintiffs suggest that they replace the language

in Box # 2 with the language next to the first bullet point.  The language next to the first

bullet point is fair and accurate.  Thus, Plaintiffs are ORDERED to make this change.

Plaintiffs also suggest inserting the word "Minimum" between "Unpaid" and "Wages"

in the Re: line of the notice.  Even with this proposed addition, the Court finds that

the Re: line would remain inaccurate.  Thus, Plaintiffs are ORDERED to replace the

Re: line in their proposed notice with the Re: line in Defendant's proposed notice.

(Doc. # 231-11.)

2.      Defendant object that the proposed notice fails to properly set forth the obligations of a potential plaintiff that opts in to this action.  The Court SUSTAINS THIS OBJECTION IN PART AND OVERRULES IN PART.  Defendant asserts that the proposed notice fails to inform potential plaintiffs that they may have to pay costs if they do not prevail.  The proposed notice states that Plaintiffs' counsel has taken this case on a contingency basis, which means "there will be no attorneys' fees or costs chargeable" to potential plaintiffs.  (Doc. # 219-8 at Box # 16.)  It is unclear to the Court whether this constitutes a promise by Plaintiffs' counsel not to seek costs from Plaintiffs, if Plaintiffs do not prevail.  *See Darrow*, 2012 WL 638119, at *6 (no need to inform potential plaintiffs they may be responsible for costs where plaintiffs' counsel had filed affidavit stating that they would be responsible for all costs incurred).  As this Court stated in Darrow, a proposed notice "need not warn potential plaintiffs about an obligation that is not applicable here."  *Id.*  Therefore, if Plaintiffs' counsel files an affidavit that they will cover any award of costs, Plaintiffs need not include language warning potential plaintiffs of the possibility that they may be responsible for costs.  Absent submission of such an affidavit, however, the Court finds that "because an award of costs is a possibility under the existing caselaw, potential class members should be informed of that possibility."  Wass, 2011 WL 11187774, at *8.  Thus, Plaintiffs are ORDERED to insert the following language on pg. 4, Box # 10 of the proposed notice:  "If you do not prevail on your claim, court costs and expenses (not including Pizza Hut's attorneys' fees) may possibly be assessed against you," unless Plaintiffs' counsel files an affidavit stating that they will be responsible for all possible costs.

Further, the Court agrees with Defendant that the proposed notice fails to inform potential plaintiffs of other obligations they may encounter if they opt in to this action. Thus, "it is reasonable and necessary to inform potential plaintiffs that 'they may be deposed, required to submit written discovery, compelled to testify, and obligated to appear in Denver."  Darrow, 2012 WL 638119, at *6 (quoting Wass, 2011 WL 118774, at *10).  Accordingly, Plaintiffs are ORDERED to include the following language on pg. 4, Box # 10 of the proposed notice: "While this suit is pending you may be required to submit documents and written answers to questions and to testify under oath at a deposition, hearing, or trial, which may take place in Denver, Colorado."

3.      Defendant contends that the proposed notice is not neutral because it impermissibly (1) suggests that the lawsuit is about reimbursement of delivery drivers' expenses, rather than whether the delivery drivers were paid the federal minimum wage; (2) does not state that Defendant denies that it paid drivers below the minimum federal wage; (3) does not state that Defendant believes that its reimbursements reasonably approximated the expenses delivery drivers primarily incurred for its benefit; (4) does not state that Defendant intends to defend itself vigorously in this matter; and (5) does not provide contact information for defendants' counsel.   The Court OVERRULES these objections.

Defendant's first point is incorrect.  The language next to the first bullet point of the proposed notice states that this lawsuit is about whether inadequate reimbursement "reduced [Plaintiffs'] net wages . . . below the federal minimum."  Defendant's second point is mooted by Plaintiffs promise that they will include language in Box # 5 stating that Defendant "denies that it paid drivers below the federal minimum wage."  Plaintiffs

are ORDERED to insert that language into Box # 5.  Defendant's third and fourth points do not add any necessary information and so alteration would be inappropriate.   The Court also rejects Defendant's request to include contact information for Defendant's counsel.  *See, e.g., Cryer v. Intersolutions, Inc.*, No. 08-2032, 2007 WL 1053214, at *3 (D.D.C. Apr. 7, 2007) (unpublished) ("Defense counsel does not play a role in managing the distribution of the notice or the gathering of consent forms.  Including additional lawyers only creates the potential for confusion of those who receive the notice."); *Morden v. T-Mobile USA, Inc.*, No. C05-2112, 2006 WL 2620320, at *4 (W.D. Wash. Sept. 12, 2006) (unpublished) (holding that the request to include defense counsel's contact information has "no basis in law or logic").

4.      Defendant objects that the inclusion of Plaintiffs' counsel's contact information at the bottom of each page of the proposed notice is excessive and unnecessary.  The Court OVERRULES this objection.  Defendant cites no authority to support its argument.  Potential plaintiffs should have the opportunity to ask questions and discuss concerns with counsel before determining whether to join this action. *See Darrow*, 2012 WL 638119, at *6.  Including Plaintiffs' counsel's contact information on each page of the proposed notice facilitates this objective.

5.      Defendant objects to the heading on the proposed notice that reads: "The Honorable Judge Christine M. Arguello and the Honorable Magistrate Judge Boyd N. Boland of the United States District Court for the District of Colorado are overseeing this collective action."  Defendant contends that the heading suggests that the Court has found merit to the case.  The Court OVERRULES this objection.  There is nothing inaccurate or unfair about the heading, and alteration is not "necessary."  *See Darrow*,

2012 WL 638119, at *5 (noting that identical heading was based on a model notice form issued by the Federal Judicial Center).

6.      Although not specifically objected to by Defendant, the Court finds that the language in the "Ask to be Included" and "Do Nothing" boxes is misleading and must be revised.  The language in the "Ask to be Included" box states that potential plaintiffs "keep the possibility of getting money or benefits from a trial or a settlement of wage and hour claims."  The Court finds that the language suggests that potential plaintiffs lose the possibility of getting money and benefits for their claims, even though there is nothing precluding potential plaintiffs from bringing a separate action.  *See Darrow*, 2012 WL 638119, at *5.  Thus, Plaintiffs are ORDERED to change "keep" to "have."  The language in the "Do Nothing" box also suggests that potential plaintiffs give up the right to recover for FLSA violations if he or she does not opt in to this action.  Thus, Plaintiffs are ORDERED to add the words "in this lawsuit" to the first sentence in the "Do Nothing" box.

7.      Except as specifically addressed above, the Court APPROVES the proposed notice and consent forms.  Before sending these materials to potential plaintiffs, Plaintiffs shall provide a new notice form, revised in accordance with this Order, to Defendant for review.  Defendant shall have two business days from the receipt of such a revised notice form to assert any objection that the form does not comply with this Order.  Defendant may not assert any new objection that it failed to raise in its opposition to the instant motion.  If Defendant raises any proper objection, the parties shall confer, and involve the Court only if they are unable to resolve the issue between themselves.

## IV. **CONCLUSION**

Accordingly, it is ORDERED that Plaintiffs' "Amended Motion for Conditional Collective Action Certification" (Doc. # 219) is GRANTED, and a plaintiff opt-in class is conditionally certified as set forth herein.

It is FURTHER ORDERED that Plaintiffs are authorized to send notice and consent forms, in accordance with this Order, to each member of the class.  To facilitate the dissemination of such forms, Defendant is ORDERED to provide to Plaintiffs' counsel, within fourteen days of this Order, the names, last known addresses, and dates of employment for each potential plaintiff, as well as the store location and number where each potential plaintiff worked.  This information should be provided on a computer readable data file.

It is FURTHER ORDERED that Defendant shall post the notice in the employee areas of the stores where delivery drivers work until the 90-day opt-in period closes.

DATED:  April __21__, 2012

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge