IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No.  09-cv-01632-CMA-BNB

MARK SMITH, individually and on behalf
of other similarly situated persons,

Plaintiffs,

v.

PIZZA HUT, INC.,

Defendant.
_____

# ORDER
_____

This matter arises on the **Plaintiffs' Motion to Compel** [Doc. # 342, filed 3/21/2013] (the "Motion to Compel").  I held a hearing on the Motion to Compel on April 16, 2013, and took the matter under advisement.

The Motion to Compel raises numerous disputed issues, and is GRANTED IN PART and DENIED IN PART as specified below.

### 1.  Studies and Analyses Regarding Pizza Hut's Reimbursement Rate

In response to interrogatories, Pizza Hut indicated that it will rely on certain studies in defense of the claim that its reimbursement rate is adequate.  In particular, Pizza Hut relies on "data provided by Runzheimer," Response to Interrogatory No. 9 [Doc. # 345-1] at p. 12; "a survey of Pizza Hut's delivery drivers . . . to determine the type of automobile that should be used as the standard vehicle for calculating Fixed Costs and Operating Costs," id. at p. 13; "[a] survey . . . to determine the age of Pizza Hut's driver vehicles to account for depreciation in the Fixed Costs calculation, id.; "vehicle cost data" developed by Runzheimer International,

Response to Interrogatory No. 14 [Doc. # 345-2] at p. 11; "data received from Runzheimer to calculate a per-mile cost," id. at p. 13; an analysis by which "Pizza Hut determined the average miles its delivery drivers travel per trip, which is less than 3 miles round trip", id.; analyses supporting Pizza Hut's decision to make exceptions "where the average round trip may be higher," including that supporting an increased the rate for Store No. 311417 in Porter, Texas, id.; and information derived from Pizza Hut's "Concerned Resolution Process." Id. The plaintiffs moved to compel the production of these materials.

Pizza Hut responded that it "agrees to produce all final studies upon which [it] may rely, subject to redactions for privileged information that is irrelevant to any of the claims and defenses at issue in this case." Response [Doc. # 351] at p. 3. Based on this, Pizza Hut argued that this portion of the Motion to Compel should be denied as moot.

Pizza Hut may not produce only those portions of the "final studies" upon which it will rely. To the contrary, the plaintiffs are entitled to the complete studies and the underlying data supporting those studies in order to be able to test and/or challenge the reasonableness of Pizza Hut's reliance on the final studies to justify its position. For example, if the raw data was improperly manipulated in the final studies relied on by Pizza Hut, the plaintiffs must be able to demonstrate that impropriety.

In addition, Pizza Hut claimed that some communications concerning the studies and underlying data are immune from discovery because of the involvement of Pizza Hut's in-house counsel, Erika Burkhardt, in "ensuring that Pizza Hut's policies concerning driver reimbursement rates were in compliance with the FLSA." Id. at p. 6. In particular, Pizza Hut argued that "the withheld communications contain in-house counsel's thoughts and impressions

regarding Pizza Hut's legal compliance, as well as factual information transmitted between employees and in-house counsel for the purpose of obtaining legal advice." Id.  The plaintiffs countered by arguing that Pizza Hut has waived any claim of privilege by putting the Runzheimer and other studies at issue.  Motion [Doc. # 342] at pp. 2-4 (arguing that "[m]erely *referencing* such a study in its defense, without actually *producing any* of it, constitutes issue waiver")(original emphasis).

This case arises under the federal Fair Labor Standards Act, and jurisdiction exists under 28 U.S.C. § 1331.  Consequently, questions of privilege are determined by applying the federal common law of privileges.  Everitt v. Brezzel, 750 F. Supp. 1063, 1066 (D. Colo. 1990).

To establish at issue waiver of the attorney-client privilege, as the plaintiffs allege here, it must be shown:

> 1) assertion of the privilege was the result of some affirmative act, such as filing suit or assertion of an affirmative defense, by the party claiming the privilege; 2) through this act, the party put the protected information at issue; and 3) application of the privilege would have denied the opposing party access to information vital to his or her defense.
>
> The mere fact that privileged material is relevant to a matter that is raised as an issue in connection with the assertion of an affirmative defense is insufficient to trigger a waiver of the privilege.  Instead, the key is whether the defendant will assert privileged material in aid or furtherance of its argument that it complied with the . . . laws.

Frazier v. Bd. of County Comm., 2010 WL 447785 *1 (D. Colo. Feb. 3, 2010)(internal quotations and citations omitted).

In this case, I find that there has not been an at issue waiver of the attorney-client privilege.  Although Pizza Hut will rely on certain studies performed by Runzheimer and others,

there is no showing that it will rely in its defense on materials created by Ms. Burkhardt or other Pizza Hut lawyers or on their legal advice or opinions. The studies, which are not privileged and on which Pizza Hut will rely in defense, must be produced in their entirety, including drafts and raw data. The legal advice given to Pizza Hut based on those studies, on which Pizza Hut does not intend to rely, is privileged, and there has been no waiver of that privilege. See id. at *3.

The Motion to Compel is GRANTED to require Pizza Hut to produce the complete studies and the underlying data supporting those studies regarding Pizza Hut's reimbursement rate, but it is DENIED insofar as it seeks an order compelling those documents withheld by Pizza Hut on a claim of attorney-client privilege.

**2. Corrected and Additional Information That Should Be Compelled**

(a) Pizza Hut agreed to produce "delivery vehicle information" for "*all* opt-in Plaintiffs." Response [Doc. # 351] at p. 10 (original emphasis). Consequently, except for setting a date by which the information must be produced, I agree with Pizza Hut that this issue is moot.

(b) The plaintiffs seek an order compelling the production of "complete file layouts and data dictionaries, and data in *data* format." Motion [Doc. # 342] at p. 10. Pizza Hut responded that "no additional file layouts or data dictionaries exist." Response [Doc. # 351] at p. 11.

At the hearing on the Motion to Compel, the plaintiffs pointed to the PeopleSoft application as an example of a manual which must exist but has not been produced. Pizza Hut responded that there is no such thing.

I cannot compel a party to produce that which does not exist. Without additional evidence to support its request, the plaintiffs have failed to show that there are additional responsive documents which have not been produced.

4

(c)  The plaintiffs seek an order compelling Pizza Hut to produce information concerning the "number of deliveries and reimbursement paid."  Motion to Compel [Doc. # 342] at p. 11. Pizza Hut responded that "[t]he only Pizza Hut data showing the number of deliveries and reimbursements paid to delivery drivers are the Driver Dispatch Reports" which are "not readable outside of the point of sale system within each store" and are retained "in .txt file format."  Response [Doc. # 351] at pp. 12-13.  Pizza Hut asserted that it "has diligently preserved the information that is relevant to this case--the reimbursement data as it exists within the Driver Dispatch Records."  Id. at p. 14.  Implicit is that Pizza Hut made this information available to the plaintiffs.

At the hearing on the Motion to Compel, plaintiffs counsel again argued, without supporting evidence, that there must be more.  On this record, and without evidence establishing that something more exists, I cannot compel Pizza Hut to produce what it says does not exist.

(d)  The plaintiffs complain:

> The Driver Dispatch reports . . . identify each driver using a convention different from the conventions used in the payroll data. . . . To calculate the minimum wage violation for each driver who has opted into this case, the drivers should be matched to both the payroll and the delivery records.  Plaintiffs have repeatedly asked Pizza Hut to identify and produce any information that allows that cross-matching between the employee ID in the payroll and the different convention used in the delivery data.  But Pizza Hut has failed and refused to either specify and produce information, or state that no such information exists.

Motion to Compel [Doc. # 342] at p. 13.

Pizza Hut responded:

> [C]ertain data contained in SUS relating to deliveries . . . holds business value for only a very short period of time.  When a shift begins, Pizza Hut drivers log into SUS using a two-digit code and

5

> receive a "bank" or advance of money for that shift. The two-digit code is often, but not necessarily, the driver's own initial, and no two drivers at the same store may use the same two-digit code. Pizza Hut has never created a master list of two-digit codes for its thousands of employees around the country and has had no business reason to do so. Much like a company that allows its employees to create their own computer password when logging onto a computer system, Pizza Hut's drivers are responsible for creating their own code and may change that code at any time with manager approval.

Response [Doc. # 351] at p. 13.

On this record, and without evidence establishing that something more exists, I cannot compel Pizza Hut to produce what it says does not exist.

(e) The plaintiffs seek an order compelling production of employee profile data with corrected and additional information. Motion [Doc. # 342] at p. 14. Pizza Hut responded that this information was provided on April 12, 2013, and plaintiffs' counsel acknowledged that he has not yet reviewed that production. This matter appears to be moot in view of Pizza Hut's representation, but may be renewed in the event the plaintiffs find the most recent production to be inadequate.

### 3. Deposition of Plaintiffs' Data-Related Topic

Apparently the parties disagreed about whether the requested deposition would be taken pursuant to Fed. R. Civ. P. 30(b)(6) or individually of Mr. Light. At the hearing, Pizza Hut's counsel agreed that the deposition could be pursuant to Rule 30(b)(6), rendering the dispute moot except for the time within which the deposition must be completed.

IT IS ORDERED:

(1) The Motion to Compel [Doc. # 342] is GRANTED IN PART and DENIED IN PART as follows:

• GRANTED to require Pizza Hut to produce the complete studies, including drafts, and the underlying data supporting those studies regarding Pizza Hut's reimbursement rate; to produce all delivery vehicle information for all opt-in plaintiffs; and to produce a deponent pursuant to Fed. R. Civ. P. 30(b)(6) to testify concerning the plaintiffs' data-related topic; and

• DENIED in all other respects.

(2)     Pizza Hut shall provide supplemental discovery responses and produce responsive documents consistent with this Order on or before May 17, 2013.

(3)     Pizza Hut shall produce a deponent pursuant to Fed. R. Civ. P. 30(b)(6) to testify concerning the plaintiffs' data-related topic at a date, time, and place as the parties may agree, but not later than June 10, 2013.

Dated April 23, 2013.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge